**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**VISHAL PRAJAPATI,**

**Plaintiff,**

**v.**

**DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES,**

**Defendant.**

**CIVIL ACTION FILE**

**NO. 1:25-CV-3935-MHC**

# ORDER

This case comes before the Court on Defendant's unopposed Motion to Dismiss Plaintiff's Complaint ("Mot. to Dismiss") [Doc. 6 at 1-2].

## I. BACKGROUND[1]

Plaintiff Vishal Prajapati is a citizen of India residing in Griffin, Georgia. Compl. ¶ 1. Plaintiff filed the above-styled action on July 15, 2025, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), seeking an order compelling Defendant, the Director of the United States Citizenship and

[1] Because this case is before the Court on Defendant's Motion to Dismiss, the facts are presented as alleged in Plaintiff's Pro Se Complaint ("Compl.") [Doc. 1]. See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

Immigration Services ("USCIS") to (1) issue a bona fide determination on his U-Visa application "within 14 days," or, in the alternative, (2) compel USCIS to "make a wait list decision for Plaintiff within 30 days." Id. at 2.

### A. Statutory and Regulatory Background

Congress established the "U-Visa" program as a part of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, 114 Stat. 1464, which amended the Immigration and Nationality Act, 8 U.S.C. §§ 1101, et seq. ("INA"). See 8 U.S.C. § 1101(a)(15)(U). The "U-Visa" program garners its name from the subparagraph at which it is codified—8 U.S.C. § 1101(a)(15)(U). Its purpose is to "strengthen the ability of law enforcement agencies to detect, investigate and prosecute cases" by encouraging undocumented victims of crimes to step forward and cooperate with law enforcement, and thereby improve public safety. Victims of Trafficking and Violence Protection Act of 2000, H.R. 3244, 106th Cong. § 1513(a)(2) (2000). In exchange for their cooperation, the undocumented aliens are permitted to apply for temporary resident status and authorization to work lawfully in the United States. 8 U.S.C. § 1184(p).

An alien may be entitled to U-Visa status if

> (I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity . . .;
>
> (II) the alien . . . possesses information concerning criminal activity . . .;

> (III) the alien . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity . . .; and
>
> (IV) the criminal activity . . . violated the laws of the United States or occurred in the United States . . . .

8 U.S.C. § 1101(a)(15)(U)(i); 8 C.F.R. § 214.14(b).

The INA charges the Secretary of the Department of Homeland Security with the duty to "establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under" the INA. 8 U.S.C. § 1103(a)(3). The Secretary has in turn delegated much of this authority to administer immigration programs to USCIS. See 8 C.F.R. § 2.1. Administration of the U-Visa program is among USCIS's delegated responsibilities and the regulations specifically give USCIS "sole jurisdiction over all petitions for U nonimmigrant status." 8 C.F.R. § 214.14(c)(1); see also L.D.G. v. Holder, 744 F.3d 1022, 1024 (7th Cir. 2014) ("The decision whether to grant a U Visa is statutorily committed to the discretion of the Secretary of Homeland Security . . . and is exercised through USCIS, an office within the Department of Homeland Security (DHS).") (internal citation omitted).

To apply for a U-Visa, an applicant must submit an I-918 Petition for U Nonimmigrant Status as well as a U-Visa certification from a certifying agency stating that the foreign national possesses important information about criminal activity and will cooperate with the investigation or prosecution. 8 C.F.R. § 14.14(c)(1), (c)(2)(i). USCIS processes these applications in the order they are filed. 8 C.F.R. § 214.14(d)(2). USCIS regulations provide that when a U-Visa application is submitted, the agency will complete a "de novo review of the petition and evidence," and "issue a written decision approving or denying Form I-918." 8 C.F.R. § 214.14(c)(5). "If USCIS determines that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS will approve [the] Form I-918," 8 C.F.R. § 214.14(c)(5)(i), that person "is employment authorized incident to status," and USCIS will "automatically" issue an initial employment authorization document. 8 C.F.R. § 214.14(c)(7). While an applicant awaits a determination from USCIS on the I-918 Application, USCIS has the authority to issue employment authorization to U-Visa applicants. 8 U.S.C. § 1184(p)(6) ("The Secretary [of Homeland Security] may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title.").

The relevant policy guidance provides that USCIS "implemented the Bona Fide Determination (BFD) process" pursuant to the statutory discretion it has "to provide employment authorization to aliens with pending, bona fide U nonimmigrant status petitions." See USCIS Policy Manual, Vol. 3, Part C, Ch. 5 – Bona Fide Determination Process, available at https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited June 12, 2026).[2] The policy describes the discretionary nature of the BFD process:

> During the BFD process, USCIS first determines whether a pending petition is bona fide. Second, USCIS, in its discretion, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion. If USCIS grants the alien a Bona Fide Determination Employment Authorization Document (BFD EAD) as a result of the BFD process, USCIS then also exercises its discretion to grant that alien deferred action for the period of the BFD EAD.

Id.

Even after USCIS reviews a U-Visa application and determines that the applicant is eligible, the U-Visa does not necessarily issue immediately because

---

[2] "[A] court may take judicial notice of government websites." Lamonte v. City of Hampton, 576 F. Supp. 3d 1314, 1327 (N.D. Ga. 2021) (citing Rule 201(b)(2) of the Federal Rules of Evidence (providing that courts may judicially notice facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")).

Congress has imposed a statutory cap of 10,000 new U-Visas per year. See 8 U.S.C. § 1184(p)(2)(A). Individuals who are determined by USCIS to be eligible for a U-Visa but do not receive one "due solely to the cap" are placed on a wait list. 8 C.F.R. § 214.14(d)(2). Applicants on the wait list are eligible for employment authorization documents. Id. ("USCIS, in its discretion, may authorize employment for [applicants on the waitlist] and qualifying family members.").

An applicant who is approved for, and is issued, a U-Visa receives lawful nonimmigrant status for up to four years, with the potential for an extension. See 8 U.S.C. § 1184(p)(6). The U-Visa holder is also statutorily entitled to employment authorization incident to their status. See 8 U.S.C. § 1184(p)(3)(B) ("[T]he Attorney General shall, during the period those aliens are in lawful temporary resident status under [the U-Visa program], provide the aliens with employment authorization."). USCIS regulations require this employment authorization to issue "automatically." 8 C.F.R. § 214.14(c)(7).

**B. Plaintiff's Complaint**

On August 21, 2024, Plaintiff was the victim of an assault in Griffin, Georgia. Compl. ¶ 9. On January 31, 2025, Plaintiff filed a complete and signed I-918 Petition for U Nonimmigrant status, as well as a Form I-765 application for

authorization. Id. ¶¶ 10-11. At the time he filed the above-styled Complaint on July 15, 2025 (almost six months later), USCIS had not taken any action on Plaintiff's applications. Id. ¶ 19. The crux of Plaintiff's Complaint is that USCIS has not issued any decision on his application, nor has it placed him on the waitlist. See generally Compl. Plaintiff, proceeding pro se, asserts the following claims: (1) unreasonable BFD delay pursuant to 5 U.S.C. §§ 551(b), 706(1); (2) unlawfully withholding a waitlist decision pursuant to 8 C.F.R. § 214.14(d)(2); and (3) unreasonably delaying a waitlist decision pursuant to 8 C.F.R. § 214.14(d)(2). Id. ¶¶ 22-129. Plaintiff alleges that he is not seeking any relief related to his work authorization. Id. ¶ 29.

Most of the allegations in Plaintiff's Complaint are conclusory legal statements that are more frequently used in legal briefs. For example, nearly half the allegations in Plaintiff's Complaint detail the six factors frequently used to analyze unreasonable delay claims brought pursuant to the APA. Id. ¶¶ 33-82 (arguing that the factors described in Telecomms. Rsch. & Action Ctr. v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984), weigh in favor of compelling agency action). Plaintiff's Complaint also contains a number of legal conclusions in which Plaintiff contends that the Court has subject matter jurisdiction to hear Plaintiff's APA claims because USCIS is required to make determinations as to whether applicants

have filed bona fide applications for U-Visas and for a waitlist decision. Id. ¶¶ 30-48.

## II. LEGAL STANDARDS

### A. Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a claim may be dismissed for "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (quotations and citation omitted) (alterations accepted). In such cases, the plaintiff is "afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." Id. (citing Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)[3]). A court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." See id. (quoting Williamson, 645 F.2d at 412-413); see also Lee-Lewis v. Kerry, No. 2:13-CV-80, 2016 WL 6647937, at *3 (S.D. Ga.

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

Nov. 8, 2016) (holding that a court is "free to weigh the evidence" outside the pleadings).

On the other hand, "factual attacks . . . challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (internal quotations omitted). "Under a factual attack, the Court is free to weigh the facts and is not required to view them in the light most favorable to the plaintiff." Am. Ins. Co. v. Evercare Co., 699 F. Supp. 2d 1355, 1358 (N.D. Ga. 2010), aff'd per curiam, 430 F. App'x 795 (11th Cir. 2011) (citing Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009)). When subject matter jurisdiction is challenged on a motion to dismiss, the party asserting jurisdiction bears the burden of proof. Cypress Ins. Co. v. Jesse Batten Farms, LLC, 662 F. Supp. 3d 1337, 1344 (N.D. Ga. 2023) (quoting Murphy v. Sec'y, U.S. Dep't of Army, 769 F. App'x 779, 782 (11th Cir. 2019)).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed

for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as

factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III. ANALYSIS

Defendant argues (1) that the Court lacks jurisdiction over Plaintiff's claims because determinations as to U-Visas are committed to agency discretion and there is no law compelling USCIS to make those determinations by a date certain; and (2) even if the Court did have subject matter jurisdiction, Plaintiff has failed to state a viable claim. See generally Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") [Doc. 6 at 3-23]. Plaintiff did not respond to Defendant's Motion to Dismiss. Accordingly, the Court deems the motion unopposed. See Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed"); LR 7.1B, NDGa. ("Failure to file a response shall indicate that there is no opposition to the motion."). Although Defendant's Motion is deemed unopposed, the Court cannot grant it without considering the motion on its merits. See Giummo v. Olsen, 701 F. App'x 922, 925 (11th Cir. 2017) (reversing the district court's grant of unopposed motions to dismiss where the court "neither provided any reason why the plaintiffs' complaint

failed to state a claim nor otherwise indicated that it had considered the sufficiency of the complaint's allegations.").

### A. This Court Does Not Have Subject Matter Jurisdiction to Adjudicate a Dispute Wherein Plaintiff Seeks to Compel the Government to Perform a Discretionary Act.

Under the APA, reviewing courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To state a claim for unreasonable delay, a party must allege "that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). The APA's judicial review provisions do not apply when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); see also Hearst Radio v. F.C.C., 167 F.2d 225, 227 (D.C. Cir. 1948)("[The APA] does not provide judicial review for everything done by an administrative agency."). In fact, the APA "preclude[s] judicial review of discretionary agency functions." Hidalgo Canevaro v. Wolf, 540 F. Supp. 3d 1235, 1241 (N.D. Ga. 2021) (citing 5 U.S.C. § 701 (providing that the APA does not apply where "agency action is committed to agency discretion by law.")). Instead, under the APA, a claim alleging that an agency has unlawfully withheld or unreasonably delayed agency action "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton, 542 U.S.

at 64. In other words, the APA "empowers a court only to compel an agency to perform a ministerial or non-discretionary act." Id. (internal punctuation and citation omitted).

The Court is without jurisdiction to hear Plaintiff's APA claims in this case because the action Plaintiff seeks to compel—the issuance of a bona fide determination "within 14 days"—is a matter left to governmental discretion.[4] See Hasan v. Wolf, 550 F. Supp. 3d 1342, 1347 (N.D. Ga. 2021) ("Review of the statutory and regulatory provisions pertaining to the U-Visa Program demonstrates that the pace of adjudicating U-Visa petitions is statutorily committed to the discretion of the Secretary, and by extension, USCIS."). Because Plaintiff has failed to identify a clear, non-discretionary duty to act on the part of Defendant, the Court lacks subject matter jurisdiction over Plaintiff's claims under the APA as a matter of law. See Hidalgo Canevaro, 540 F. Supp. 3d at 1243 (holding that the court had no subject matter jurisdiction to enter an order mandating action where there the government had no non-discretionary duty to act).

---

[4] Although Plaintiff asks the Court to either compel a BFD or a waitlist decision, placement on the waitlist can only occur after the BFD process. See 8 C.F.R. § 214.14(d)(2). Accordingly, the Court only analyzes Plaintiff's request for a BFD.

**B. Plaintiff Has Failed to State a Claim Pursuant to the APA.**

Even if Plaintiff had established that Defendant has a nondiscretionary duty to act on Plaintiff's U-Visa application, Plaintiff has not shown that the alleged duty has been "unreasonably delayed." See 5 U.S.C. § 706(1). To assess whether agency action has been "unreasonably delayed," courts look to the factors described in Telecomms. Rsch. & Action Ctr., (the "TRAC factors"), which are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed'.

750 F.2d at 80 (quotation marks and citations omitted). The Eleventh Circuit has not expressly adopted the TRAC factors, but other circuits and most lower courts have found the factors to be helpful in analyzing unreasonable delay claims against the federal government. See, e.g., Gonzalez v. Cuccinelli, 985 F.3d 357, 375 (4th

Cir. 2021) (applying the TRAC factors); Hidalgo Canevaro, 540 F. Supp. 3d at 1244 (same); Patel v. Cissna, 400 F. Supp. 3d 1373, 1383 (M.D. Ga. 2019) (same).

### 1. TRAC Factor 1

The first TRAC factor, whether the time the agency took to make a decision followed a "rule of reason," requires the Court to inquire "into whether there is any rhyme or reason for the Government's delay—in other words, whether the agency's response time is governed by an identifiable rationale." Palakuru v. Renaud, 521 F. Supp. 3d 46, 50-51 (D.D.C. 2021) (internal punctuation and citation omitted). Defendant represents that U-Visa petitions are "generally adjudicated in order of submission, with some petitions being expedited subject to criteria set forth by the agency." Def.'s Mem. at 14 (citing Romero v. Scott, No. 24 C 4372, 2025 WL 815071, at *4 (N.D. Ill. Mar. 12, 2025); N-N v. Mayorkas, 540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021)). Plaintiff's Complaint argues that Defendant's process for adjudicating U-Visas is not on a "first in, first out" basis, and includes several charts which purport to show that "USCIS does not adjudicate BFDs in any discernable order" and that "the pending U Visa applications are in a pool and USCIS chooses the applications to decide at random." See Compl. ¶¶ 35-57. Plaintiff does not allege any factual basis to support this conclusory allegation that the applications are not considered on a "first in, first out" basis and it is

therefore not entitled to the presumption of validity See Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc., 522 F. Supp. 3d 1202, 1209 (S.D. Fla. 2021) ("Although information and belief pleading can sometimes survive a motion to dismiss where a plaintiff alleges specific facts to support a claim, conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the plausibility standard.") (internal punctuation and citation omitted).

Courts considering this policy, including courts in this district, have found routinely found that the "USCIS's process of 'first in, first out' to be a rule of reason." Anid Infosoft LLC v. Blinken, No. 1:22-CV-4721-TWT, 2023 WL 7312488, at *5 (N.D. Ga. Nov. 3, 2023); see also Hidalgo Canevaro, 540 F. Supp. 3d at 1244-45 (finding that the "first in, first out basis" for processing visa applications was a rule of reason); Muvvala v. Wolf, No. 20-cv-02423-CJN, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor."). "[A]ll of the district courts that have considered this question have concluded that the visa availability approach satisfies the rule of

reason." Jain v. Renaud, No. 21-CV-03115-VKD, 2021 WL 2458356, at *4 (N.D. Cal. June 16, 2021).

Whether Defendant's actions satisfy the rule of reason

> cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part, as we have said, upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.

Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Accordingly, it is informative—but not dispositive—that the delay between Plaintiff submitted his application (January 31, 2025) and the present "delay" (approximately 17 months) is a shorter period of time than other immigration delays that were found to be reasonable. See, e.g., Palakuru, 521 F. Supp. 3d at 52 (finding that two-year delay in processing petition for visa was not unreasonable); Bagherian v. Pompeo, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (analyzing the TRAC factors and finding that the twenty-five-month delay was not unreasonable as a matter of law.); Ghadami v. United States Dep't of Homeland Sec., No. 19-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law."); Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (collecting cases concluding that delays of four and a half, five, and

ten years in adjudicating a visa application were not unreasonable in different immigration contexts). "Indeed, the relatively short length of time plaintiff['s] application has been pending compared to the typical processing time for U-Visa applications . . . counsels against concluding USCIS failed to use its asserted rule of reason in this case." Patel v. Noem, No. 25 C 2859, 2025 WL 2164835, at *2 (N.D. Ill. July 25, 2025). Accordingly, this factor favors Defendant.

**2. TRAC Factor 2**

The second TRAC factor analyzes whether Congress provided any timetable or other indication of the speed with which it expects the agency to proceed. This factor is inapplicable here because Congress has not set a specific timetable for the processing of non-immigrant U-Visas. See Barrios Garcia, 25 F.4th at 453 ("[W]hen no statute sets a deadline for an agency action, the second TRAC factor is not relevant to an 'unreasonably delayed' analysis."). Because Congress has not given a timetable, it does not supply content for the rule of reason and is inapplicable to this case.

**3. TRAC Factors 3 and 5**

The third and fifth factors involve the nature of delays and any prejudice suffered therefrom. Plaintiff alleges that without a BFD, he is unable to work, seek a social security number, and is in danger of being removed from the United

States. Compl. ¶¶ 65-68. The Court empathizes with Plaintiff, and Plaintiff's interest in receiving a decision is "undeniably significant." Ghadami, 2020 WL 1308376, at *9. However, presumably every U-Visa applicant "is in the same position, and thus a judicially-sanctioned re-ordering of USCIS's process would net no prioritization of human welfare." Hidalgo Canevaro, 540 F. Supp. 3d at 1245.

Plaintiff's personal harm "alone is insufficient to compel USCIS to expedite determinations. Every delay in work authorization necessarily affects a petitioner's ability to earn a livelihood, and Plaintiff fails to differentiate the effect of delay upon his from the effect inflicted upon other petitioners waiting ahead of him for adjudication." Alvarado v. Dir., US Citizenship & Immigr. Servs., No. CIV-25-799-R, 2026 WL 413424, at *7 (W.D. Okla. Feb. 13, 2026) (internal punctuation accepted, citation omitted); see also Nayi v. Noem, 799 F. Supp. 3d 739, 749 (N.D. Ill. 2025) (finding that the plaintiffs' failure "to differentiate the effect of delay upon them from the effect inflicted upon other [U-Visa] petitioners waiting ahead of them for adjudication" favored USCIS). Accordingly, the Court finds that these factors are neutral.

### 4. TRAC Factor 4

The fourth TRAC factor considers how expediting Plaintiff's U-Visa application might impede other agency priorities and "carries the greatest weight in many cases[.]" Milligan v. Pompeo, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). Even when all other TRAC factors lie in a plaintiff's favor, courts have refused to grant relief where entering "a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." Mashpee Wampanoag Tribal Council, 336 F.3d at 1100 (alterations omitted). Defendant contends that the fourth factor favors it because Plaintiff "makes no effort to argue adjudicating his petition would help petitioners as a whole, but rather he only . . . seeks to jump ahead of those without the capacity to sue." Def.'s Mem. at 16 (quoting Cohen v. Jaddou, No. 21-cv-5025, 2023 WL 2526105, at *6 (S.D.N.Y. Mar. 15, 2023)). Plaintiff has not pleaded any facts that would justify "shifting existing agency priorities," which his lawsuit would necessarily require. Mueller v. Blinken, 682 F. Supp. 3d 528, 540 (E.D. Va. 2023) (citation and quotation omitted).

> [I]f the court were to grant the relief Plaintiff seeks, it would divert resources from other processing priorities to Plaintiff's . . . application[]. The court cannot override the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.

Tekle v. Blinken, No. 21-CV-1655 (APM), 2022 WL 1288437, at *4 (D.D.C. Apr. 29, 2022) (quotation and citation omitted); see also Mueller, 682 F. Supp. 3d at 540 ("But what the Court can conclude at this stage, without discovery, is that a judicial order putting the plaintiffs at the head of the queue would simply move all others back one space and produce no net gain.") (internal punctuation and citation omitted).

Because entering an order expediting an adjudication of a BFD on Plaintiff's U-Visa application would necessarily require a juridically-sanctioned re-ordering of USCIS's process and negatively affect competing U-Visas, the Court finds that the fourth factor weighs in favor of Defendants. See Mueller, 682 F. Supp. 3d at 540 ("Given that the plaintiff has pleaded no facts that would warrant such a reordering of the queue, a court order in Plaintiff's favor would shift existing agency priorities without justification. Thus, TRAC factor four weighs in favor of the Secretary.") (internal punctuation and citation omitted); see also Anid Infosoft LLC, 2023 WL 7312488, at *6 (finding that the fourth TRAC factor weighed against visa applicants because granting the requested relief "would simply cause other people who have applied for . . . visas to suffer the same effects that the Plaintiffs have alleged here."); Alvarado, 2021 WL 3828644, at *8 (finding that the fourth TRAC factor disfavored plaintiffs where granting the requested relief would

simply bump their applications to the front of the queue); Hidalgo Canevaro, 540 F. Supp. 3d at 1245 ("Thus, the effect of their requested relief would be to further delay "agency activities of a higher or competing priority"—eligibility determinations for applications "ahead" of Plaintiffs in line. The Court cannot justify prioritizing Plaintiffs' interests over the interests of these applicants.").

**5. TRAC Factor 6**

The final TRAC factor considers any alleged impropriety by the agency. Plaintiff alleges, "upon information and belief," that USCIS "has intentionally slowed adjudication BFD and EAD decisions. It has regularly adjudicated half as many applications as its resources would allow."[5] Compl. ¶ 79. However, Plaintiff once again does not allege any facts to support this conclusory allegation and it is therefore not entitled to the presumption of validity. See Magnum Constr. Mgmt., 522 F. Supp. 3d at 1209. Because there is no non-conclusory allegation or indication of impropriety on the part of Defendants, the sixth factor is neutral.

In sum, TRAC factors one and four favor Defendants while the remaining factors are neutral or inapplicable. Accordingly, a careful balancing of all six factors together leads the Court to conclude that Defendant's alleged delay in

---

[5] Plaintiff lists Agency Impropriety as the fifth TRAC factor and does not list a sixth TRAC factor. Compl. at 15.

processing his U-Visa application does not warrant judicial intervention and, accepting the veracity of the allegations in the Complaint, Plaintiff has failed to allege a plausible cause of action based on this delay at this time under the APA because Defendant's alleged action has not been unlawfully withheld or unreasonably delayed.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss [Doc. 6 at 1-2] is **GRANTED**.

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 16th day of June, 2026.

Mark H. Cohen

MARK H. COHEN
United States District Judge